IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIKA SLUSAR,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v | ) 2:11-cv-1311 |
| | ) |
| **ALAN E. HARFF** State Constable, in his individual capacity and **BERNARD J. SESTILI, JR,** | ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court are DEFENDANT, ALAN E. HARFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56 (Document No. 89) and the AMENDED MOTION OF BERNARD SESTILI FOR SUMMARY JUDGMENT (Document No. 96).[1] Defendants Harff and Sestili filed briefs in support of their respective motions and Plaintiff Erika Slusar filed a consolidated brief in opposition to the motions. The parties have submitted numerous exhibits and have exhaustively set forth their respective positions regarding Defendants' Concise Statements of Material Facts ("CSMF"), Plaintiff's counter-CSMF, and responses thereto (ECF Nos. 87, 90, 107, 108, 109, 120, 121, 122, 123). Suffice to say, the motions are ripe for disposition.

Factual and Procedural Background

The broad contours of the underlying facts in this contentious civil rights case are relatively straight-forward, although the parties continue to dispute many of the details. To summarize briefly, on May 18, 2011, Defendant Harff, a Pennsylvania State Constable, arrived at Plaintiff Erika Slusar's home to serve arrest warrants on Slusar's boyfriend, Derrick Pryor. Slusar refused to permit Harff to enter her home without a search warrant. Harff summoned

---

[1] The initial MOTION OF BERNARD SESTILI FOR SUMMARY JUDGMENT (Document No. 86) is **DENIED AS MOOT**.

1

Penn Hills police officers (including Defendant Sestili) to the scene; eventually brandished his gun; forced entry into the home over her protests; and searched for Pryor, who was not found. Later that evening, Sestili allegedly left a voicemail message on Slusar's phone in which he allegedly threatened to charge her with hindering Pryor's arrest if she filed a complaint regarding Harff's conduct. On June 1, 2011 Slusar's attorney contacted the Allegheny County District Attorney to request an investigation into the conduct of Harff. Slusar alleges that Sestili then filed criminal charges of (1) Obstructing the Administration of Law, 18 P.S. § 5101; (2) Hindering Apprehension or Prosecution, 18 P.S. § 5105; and (3) Disorderly Conduct, 18 P.S. § 5503, against her in retaliation.

This litigation followed. On October 13, 2011 Slusar filed a five-count Complaint which asserted the following civil rights claims under Section 1983: (1) against Harff for unreasonable search of her home; (2) against Harff for unreasonable seizure; (3) against Harff for an unconstitutional "taking" under the Fifth Amendment; (4) against both Harff and Sestili for First Amendment Retaliation; and (5) against both Harff and Sestili for selective prosecution in violation of Equal Protection. On October 24, 2012, the Court granted Defendants' motion for judgment on the pleadings as to the Equal Protection claim. Defendants now seek summary judgment on all remaining claims, which are hereafter addressed seriatim.

Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In resolving a summary judgment motion, the Court must draw all reasonable inferences and construe the evidentiary record in the light most favorable to the non-moving party. *Id.* at 255. Similarly, credibility determinations are the province of the jury, not the Court. *Id.*

Legal Analysis

Section 1983 of title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) that the alleged wrongful conduct was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). In this case, it is undisputed that Defendants Harff and Sestili were law enforcement officers who acted under color of state law. However, the parties disagree as to whether Defendants violated any of Slusar's constitutional rights.

A. Unreasonable Search

The "ultimate touchstone of the Fourth Amendment is reasonableness." The law is clear that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). Several Supreme Court cases have considered whether a law enforcement officer is entitled to enter a home without a <u>search</u> warrant in order to execute an <u>arrest</u> warrant. *See, e.g., Payton v. New York*, 445 U.S. 573 (1980), and *Steagald v. United States*, 451 U.S. 204 (1981), and progeny. The *Steagald* Court explained that a homeowner's constitutional right to be free from an unreasonable search is distinct from an arrestee's interest in being free from an unreasonable seizure. 451 U.S. at 216. Although the arrestee's interest is protected by the issuance of an arrest warrant by a neutral magistrate, that procedure does not protect the homeowner's distinct interest. *Steagald* held that, absent exigent circumstances, law enforcement officers with an arrest warrant may not enter a third party's home to search for the subject of the arrest warrant. *Id*. at 213–14. As summarized in *United States v. Veal*, 453 F.3d 164, 167 (3d Cir. 2006), to validly enter a home with just an arrest warrant, "*Payton* requires that officers have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry."

In evaluating the record in this case in the light most favorable to Plaintiff, a reasonable jury could conclude that Harff acted unreasonably by entering and searching Slusar's home over her objections. Slusar had invoked her rights under the Fourth Amendment; had informed Harff that she owned the home; and told him that Pryor no longer lived there and was not inside. The typewritten address on the warrants reflected that Pryor lived at a different location: "524 5th Avenue Apt. # 102, Tarentum, PA 15084." This typewritten address was crossed out and the address of Slusar's home was written in by hand. A jury could disbelieve Harff's testimony that

he had earlier observed Pryor entering the home. Harff had never met Pryor and his belief was based on a two-second visual observation as he drove past Slusar's home in his car. Notably undermining Harff's story is the simple fact that Pryor was not found inside, even though all the doors and windows were locked and secure and Harff conducted a thorough search. Thus, a jury could conclude that Harff was on notice that Slusar was asserting her distinct constitutional right to be free from an unreasonable search of her home, as recognized in *Steagald*, and that Harff did not satisfy either of the prongs of the *Payton* test.

A jury could also conclude that Harff acted unreasonably. The arrest warrants were for traffic violations, not violent crimes, such that exigent circumstances did not exist. The shift commander for the Penn Hills police department refused to authorize entry into Slusar's home by the Penn Hills police officers, even assuming that Pryor was known to be inside, because the shift commander did not want to jeopardize officer safety to execute arrest warrants for such summary offenses. Harff was not bound by this advice. A jury could also conclude that Harff was not justified in relying on District Magisterial Justice Bengal. The District Justice was not at the scene and did not specifically authorize Harff to enter the home, but merely instructed him to "rely on his training." In summary, the Court concludes that summary judgment on Count I of the Complaint must be **DENIED**.

B. Unreasonable Seizure

Slusar alleges that Harff committed three separate unconstitutional seizures: (1) pushing her against the wall of the home; (2) seizing her cell phone as she attempted to record the incident; and (3) pointing his gun at her when she followed Harff into the home as he conducted his search for Pryor. The Court will briefly address each allegation.

There is a material dispute of fact as to whether Slusar was obstructing Harff's access to the home when he pushed her. Viewed in the light most favorable to Slusar, Harff's action was unreasonable. Harff does not address the seizure of the cell phone. Very recently, in *G.C. v. Owensboro Public Schools*, 2013 WL 1235592 at *9 (6th Cir. March 28, 2013), the Sixth Circuit Court of Appeals held that an unreasonable seizure and search of a student's cell phone may violate the Fourth Amendment even if no harm resulted, because a citizen may recover nominal damages. Accordingly, summary judgment is not appropriate as to these incidents, even though they appear to be rather de minimis.

By contrast, Harff <u>is</u> entitled to summary judgment as to the drawing of his weapon in the home. At the time, Harff was seeking to arrest Pryor, whom he believed to be hiding. Harff knew from Slusar that there was a gun in the home. Slusar entered the home behind him. Under these tense and rapidly evolving circumstances, it was reasonable for Harff to have his weapon unholstered. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Moreover, Slusar was not "seized" because she immediately ran back out of the house.

In conclusion, summary judgment on Count II will be **GRANTED IN PART** as to the drawing of the weapon in the house and **DENIED IN PART** in all other respects.

C. "Taking"

In Count III, Slusar contends that Harff's entry into her home constituted a "taking" in violation of the Fifth Amendment. She bases her argument on dicta in *Lingle v. Chevron U.S.A.*, 544 U.S. 528, 537 (2005), which described a "taking" as a "direct government appropriation *or physical invasion* of private property." (Emphasis added by Plaintiff). The applicable portion of

the Fifth Amendment does not reference physical invasions, but provides: "nor shall private property be taken for public use, without just compensation."

Both sides cite *Jones v. Philadelphia Police Dept.*, 57 Fed. Appx. 939 (3d Cir. 2000), in which a corporation contended that damages to its building caused by police officers during a search constituted a "taking." The United States Court of Appeals for the Third Circuit, in a non-precedential opinion, rejected this argument as a matter of law because the governmental intrusion had been only temporary. *Id*. at 941-42 (applying the balancing test in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 (1978)). Of particular relevance to this case, the Court in *Jones* concluded that the economic impact was minimal because the police caused just $500 in damage; and that the "character" of the intrusion arose under the police power and did not interfere with many of the traditional rights of a property owner; such that it was more analogous to a trespass than to a "taking." *Id*. at 942-43 (citations omitted).

The Court agrees with the analysis in *Jones* and the cases cited therein. The actions of Harff did not "take" Slusar's property for a public purpose without just compensation, in violation of the Fifth Amendment. Instead, his temporary intrusion was more analogous to a trespass under the exercise of the police power. Accordingly, Harff's motion for summary judgment on Count III will be **GRANTED**.

D. First Amendment Retaliation

In Count IV, Slusar asserts First Amendment Retaliation claims against both Harff and Sestili. To succeed, Slusar must prove: (1) that she engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). In

addition, because the alleged retaliation took the form of filing criminal charges, Slusar must show the absence of probable cause for those charges. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006).

The first prong of the test is easily met. Slusar engaged in protected conduct by, inter alia, invoking her Fourth Amendment right to be free from an unreasonable search of her home during the incident; and by exercising her First Amendment right to petition the government for redress of grievances by calling 911 to report the incident; by contacting the Allegheny County District Attorney to report alleged misconduct by law enforcement officers; and by instructing her attorney to pursue the allegations on her behalf.

The second prong of the test (retaliatory conduct) is met as to Sestili, as he filed criminal charges against Slusar. Sestili also left a voice message on Slusar's phone on the evening of the incident which could be construed as a threat to file charges if she persisted in her allegations of misconduct. By contrast, there is no evidence of retaliatory conduct by Harff. Harff had no role in the filing of the criminal charges against Slusar. At most, Harff provided a copy of his incident report at Sestili's request, and testified as a witness at the preliminary hearing. Accordingly, Slusar cannot make out a prima facie case of retaliation against Harff.

The necessary causal link may be proven by: "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In the absence of these elements, evidence of causation may also be "gleaned from the record as a whole." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). It is somewhat counter-intuitive that Sestili would file charges in retaliation for Slusar's complaint about Harff. On the other hand, both Sestili and Harff

threatened to file charges against Slusar during the incident on May 18. Sestili also left a phone message later that evening. Sestili initially completed an "incident report" and did not file any charges against Slusar for approximately a month. But, in mid-June Sestili learned that an investigation by the Allegheny County District Attorney Investigative Unit ("IU") had been triggered by Slusar. Sestili filed the criminal charges against Slusar almost immediately thereafter, on the same day Harff was interviewed by the IU investigator. A reasonable jury could conclude that there was a causal connection between Slusar's protected activity and the filing of charges by Sestili.

Finally, a reasonable jury could conclude that the charges were not supported by probable cause. Sestili charged Slusar with: (1) Obstructing the Administration of Law, 18 P.S. § 5101; (2) Hindering Apprehension or Prosecution, 18 P.S. § 5105; and (3) Disorderly Conduct, 18 P.S. § 5503. It is black letter law that the invocation of Fourth Amendment rights by Slusar cannot be the basis for criminal charges. In *Fletcher v. Town of Clinton*, 196 F.3d 41, 54 (1st Cir. 1996), the First Circuit Court of Appeals addressed this precise situation, albeit in dicta:

> It is important to note that [Plaintiff's] refusal to let the officers into her house cannot serve as the justification for her arrest. [Plaintiff] says that [the officer] threatened her with arrest if she denied them access to the house so that they could arrest [her boyfriend]. If that were the justification for [Plaintiff's] arrest, that arrest would be in clear violation of the Fourth Amendment.

In *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978), the Ninth Circuit Court of Appeals held that a woman could not be prosecuted for harboring a suspected felon when she invoked her Fourth Amendment rights to prevent entry into her home without a search warrant, even though she admitted that she invoked her rights solely to prevent the police from executing an arrest warrant for her boyfriend on heroin charges. *Id*. at 1350-51 & n. 2. In *Brown v. City of Pittsburgh*, 2007 WL 320833 (W.D. Pa. 2007), this

member of the Court explained that "Pennsylvania law is clear that the disorderly conduct statute may not be used to punish persons for exercising their First Amendment rights, including the right to oppose police action." *Id*. at *3 (citations omitted). *See also Whiting v. Bonazza*, 2011 WL 500797 at * 8-9 (W.D. Pa. 2011) ("cardinal feature" of disorderly conduct is public unruliness which can or does lead to tumult and disorder. It is not a catchall for every act which annoys people). Moreover, the factual basis for the charges is disputed. Sestili did not personally observe Pryor enter the home, did not press charges immediately, and it is unclear what information he justifiably obtained from Harff.

In accordance with the foregoing, Harff's motion for summary judgment on Count IV will be **GRANTED**, and Sestili's motion for summary judgment on Count IV will be **DENIED**.

### E. Qualified Immunity

Qualified immunity is not simply a defense to liability. Rather, it is intended to completely shield an officer from having to stand trial. Accordingly, the immunity issue should be considered at the earliest possible stage of the proceedings. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009). On the other hand, historical facts which may impact the immunity analysis must be viewed in the light most favorable to the plaintiff at the summary judgment stage. *Curley v. Klem*, 298 F.3d 271, 277-78 (3d Cir. 2002). Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

In this case, there are genuine issues of material fact as to whether Defendants violated Slusar's constitutional rights. The rights at issue are clearly established and the applicable legal principles have been well-developed. Indeed, Defendants do not contend that the law was uncertain or that they faced a novel fact pattern. Instead, they rely on their version of the disputed facts to argue that their actions were justified. Thus, Defendants are not entitled to summary judgment due to qualified immunity.

### F.  Punitive Damages

Harff, but not Sestili, contends that summary judgment should be granted on the issue of punitive damages. Punitive damages are available in a § 1983 case only in special circumstances, such as when the defendant's conduct amounts to reckless or callous disregard of the federally guaranteed rights of others. *Savarese v. Agriss*, 883 F.2d 1194, 1203-05 (3d Cir. 1989). It is not necessary that the conduct be intentional or motivated by an evil motive. *Id*. at 1204. Viewing the record in the light most favorable to Slusar, a jury could conclude that Harff acted in reckless and callous disregard of Slusar's Fourth Amendment rights, and that it was outrageous for Sestili to file criminal charges in retaliation for Slusar triggering an investigation of the incident. Accordingly, a jury must decide whether or not to award punitive damages. Summary judgment will be **DENIED** as to punitive damages.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIKA SLUSAR,<br>               **Plaintiff,**<br><br>            v<br>**ALAN E. HARFF** State Constable, in his individual capacity and **BERNARD J. SESTILI, JR,**<br>               **Defendants.** | )<br>)<br>)<br>)<br>) 2:11-cv-1311<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW this 19th day of April, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that:

DEFENDANT, ALAN E. HARFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56 (Document No. 89) is **GRANTED IN PART AND DENIED IN PART** as follows: (1) the motion is **DENIED** as to Count I; (2) as to Count II, the motion is **DENIED** as to the alleged push and seizure of the cell phone and **GRANTED** as to the drawing of the weapon inside the home; (3) the motion is **GRANTED** as to Count III; and (4) the motion is **GRANTED** as to Count IV.  The motion is **DENIED** as to punitive damages.

The AMENDED MOTION OF BERNARD SESTILI FOR SUMMARY JUDGMENT (Document No. 96) is **DENIED**; and the original MOTION OF BERNARD SESTILI FOR SUMMARY JUDGMENT (Document No. 86) is **DENIED AS MOOT**.

The parties shall file their Pretrial Statements on or before May 10, 2013.

The parties may file Supplemental Pretrial Statements on or before May 24, 2013.

A Pretrial Conference shall be held on June 7, 2013 at 2:00 PM.

                                                    BY THE COURT:

                                                    s/Terrence F. McVerry
                                                    United States District Judge

cc: **Richard S. Matesic, Esquire**
Email: rs.matesic@verizon.net
**Edward A. Olds, Esquire**
Email: edolds@earthlink.net
**Michael J. Herald**
Email: mherald@defensecounsel.com
**Edmond R. Joyal , Jr., Esquire**
Email: ejoyal@stpaultravelers.com